676 So.2d 114 (1996)
Mary G. HIDALGO and Elridge Hidalgo
v.
WILSON CERTIFIED EXPRESS, INC., Acadian Ambulance Service, Inc., Carlton Collier, Justin Cox, and American National Property and Casualty Company.
No. 94 CA 1322.
Court of Appeal of Louisiana, First Circuit.
May 14, 1996.
*115 Larry G. Starns, Denham Springs, for Plaintiffs-Appellees Mary and Elridge Hidalgo.
William C. Shockey, Shockey & Ziober, Baton Rouge, for Defendants-Appellants Acadian Ambulance Service, Inc., Insurance Company of North America, and Justin Cox.
Before GONZALES and PARRO, JJ., and REDMANN,[1] J. Pro Tem.
PARRO, Judge.
Defendants, Acadian Ambulance Service, Inc., Insurance Company of North America and Justin Cox, appeal from a judgment denying their dilatory exception raising the objection of prematurity. This exception was urged in response to a petition for damages brought by Mary G. Hidalgo and her husband, Elridge Hidalgo, for injuries received by Mrs. Hidalgo as a result of an accident involving the ambulance transporting her to the hospital. We affirm.
The issue in this case is whether the Hidalgos' claim against these defendants constitutes an action based in medical malpractice under the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq. ("the Act"), such that the Hidalgos are initially required to submit their claim to a medical review panel.

Allegations of Facts
According to the petition, the Hidalgos' vehicle was rear-ended by a tractor-trailer vehicle while traveling on Interstate 10 in West Baton Rouge Parish on November 29, 1992. As a result of the injuries sustained by her in this accident, Mrs. Hidalgo was put on a backboard and stretcher and placed into an ambulance owned by Acadian Ambulance Service, Inc. ("Acadian") to be transported to the hospital. The ambulance was driven by Justin Cox ("Cox"), an Acadian employee.
On the way to the hospital, the ambulance was involved in an accident when it ran into the rear of the preceding car causing a four-car pile-up. Upon the ambulance's impact with the car, Mrs. Hidalgo was thrust forward and struck her head severely on an *116 unknown object in the ambulance, causing additional injuries.

Procedural History
On October 14, 1993, the Hidalgos filed suit in district court against the driver of the tractor-trailer vehicle and his employer for injuries sustained as a result of the first accident. In this same petition, the Hidalgos named Cox, Acadian, and Insurance Company of North America (Acadian's insurer) as defendants, seeking to recover damages for injuries caused by the second accident. The petition asserted the accident involving the ambulance was at least partially caused by the negligence of the ambulance driver for (1) failing to see what he should have seen, (2) failing to keep a proper lookout, (3) driving too fast for the traffic conditions, (4) following too close to the preceding vehicle, and (5) failing to apply brakes timely to avoid an accident. The petition did not allege negligence by Acadian or its employees in any other respect.
Acadian, Cox, and Insurance Company of North America (collectively referred to as "Acadian") responded by filing an exception raising the objections of prematurity and improper venue.[2] Acadian asserted that as a health care provider, the Hidalgos' action against it is governed by the Act. Since the Hidalgos had not first submitted their claim to a medical review panel as required by LSA-R.S. 40:1299.47, Acadian argued the lawsuit filed in district court was premature.
In written reasons, the court denied Acadian's exception raising the objection of prematurity, finding the issue presented in the instant case "involve[d] a car [wreck], not medical malpractice." The judge remarked, "[i]t would be ridiculous to convene a medical review panel to pass judgment on the driving skills of the ambulance driver." Acadian appeals the court's ruling denying its exception of prematurity.
On appeal, Acadian reiterates its argument that the allegations of the Hidalgos' petition describe actions governed by the Act. Thus, this lawsuit is premature since the claims were not previously brought before a medical review panel. In rebuttal, the Hidalgos argue that Acadian did not prove its status as a qualified health care provider and that the driver was not rendering health care services while driving the ambulance. Accordingly, they contend, the Act does not apply to these claims against Acadian.

Standard of Review
As the facts are not disputed as to this appeal, the issue before this court is whether the trial court correctly interpreted and applied the law. Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La. App. 1st Cir.1990).

Prematurity
LSA-C.C.P. art. 926 provides for the dilatory exception of prematurity. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. LSA-C.C.P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. Fairfield Development Company v. Jackson, 438 So.2d 664, 669 (La.App. 2nd Cir.1983); Weldon v. Republic Bank, 414 So.2d 1361, 1362 (La.App. 2nd Cir.1982). The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. See Jones v. Crow, 633 So.2d 247, 249 (La. App. 1st Cir.1993). Generally, the person aggrieved by an action must exhaust all such administrative remedies before being entitled to judicial review. Id.
The Act provides such a mechanism in that it requires all medical malpractice claims against covered health care providers be submitted to a medical review panel prior to filing suit in district court. LSA-R.S. *117 40:1299.41(E); LSA-R.S. 40:1299.47(A) and (B). This administrative procedure affords the medical review panel an opportunity to render its expert opinion on the merits of a complaint. Hutchinson v. Patel, 93-2156, p. 4 (La. 5/23/94), 637 So.2d 415, 419. If an action against a health care provider covered by the Act has been commenced in district court and the claimant's proposed complaint has not been first presented to a medical review panel, an exception of prematurity must be sustained, and the claimant's district court claim must be dismissed. See LSA-C.C.P. art. 933; LSA-R.S. 40:1299.47(B)(1)(a)(i). This court must determine whether Acadian was a health care provider as defined by the Act, and, if so, whether the Hidalgos' claim against Acadian constitutes a medical malpractice claim as defined by the Act.[3]

A. Health Care Provider
The Hidalgos contend Acadian failed to prove it was a qualified health care provider. LSA-R.S. 40:1299.41(A)(1) defines a health care provider, in pertinent part, as:
a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service,... or an officer, employee or agent thereof acting in the course and scope of his employment.
To prove it was a health care provider, the Hidalgos contend Acadian had to first show it was an "ambulance service" as defined by LSA-R.S. 40:1299.41(A)(16), which provides, in pertinent part:
"Ambulance service" means an entity... which operates either ground or air ambulances, using a minimum of two persons on each ground ambulance, at least one of whom is trained and registered at the level of certified emergency medical technician-basic, or at the intermediate or paramedic levels, or one who is a registered nurse....
The defendant health care provider bears the burden of proving its entitlement to a medical review panel. In re Cooper, 594 So.2d 1082, 1084 (La.App. 4th Cir. 1992); Goins v. Texas State Optical, Inc., 463 So.2d 743, 744 (La.App. 4th Cir.1985). The Hidalgos claim that because Acadian did not present evidence of the qualifications and certifications of its employees, it did not establish its status as an ambulance service, and therefore cannot claim the benefits of a qualified health care provider. However, in support of its argument that the Act applies to it, Acadian introduced a certificate of enrollment completed by an agent or employee of the Louisiana Patients' Compensation Fund on November 3, 1993, which indicated Acadian was certified as an enrollee of the fund from October 1, 1992 through October 1, 1994. This certificate also revealed that Insurance Company of North America was Acadian's professional liability insurer. This document establishes that Acadian was a qualified health care provider. Having proved this ultimate fact, it was unnecessary for Acadian to prove it was an "ambulance service."

B. Medical Malpractice Claim
In general, any conduct by a health care provider complained of by a patient is properly within the scope of the Act if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability. Rogers v. Synthes, Ltd., 626 So.2d 775, 777 (La.App. 2nd Cir.1993). The provisions of the Act are not applicable to all claims against Acadian, only those claims "arising from medical malpractice." LSA-R.S. 40:1299.41(l).[4] Thus this court must determine if the Hidalgos' *118 claims against Acadian arise from medical malpractice: that is, whether Cox's behavior complained of by the Hidalgos falls within the Act.
The definition of malpractice in LSA-R.S. 40:1299.41(A)(8), in effect at the time of this accident, provided:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. (emphasis added).
The petition alleges Cox was negligent; negligence is an unintentional tort. The question then is whether the Hidalgos' tort action is "based on health care or professional services rendered, or which should have been rendered" by Acadian. "Health care" is defined in LSA-R.S. 40:1299.41(A)(9), as follows:
"Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
Although this definition is very broad, the language of the Act and interpretive jurisprudence indicate the intent of the legislature was to exclude from its scope conduct unrelated to the promotion of a patient's health or to the provider's exercise of professional expertise or skill. Jure v. Raviotta, 612 So.2d 225, 228 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La.1993).[5]
With these definitions in mind and considering the intent of the legislature, we examine the allegations in the Hidalgos' petition to determine whether their claims arise out of medical malpractice such that Acadian would be entitled to a medical review panel. See Stapler v. Alton Ochsner Medical Foundation, 525 So.2d 1182, 1184 (La.App. 5th Cir. 1988); Head v. Erath General Hospital, Inc., 458 So.2d 579, 581 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 650 (La.1985). The Hidalgos allege Mrs. Hidalgo was injured in the second accident due to Cox's negligence in driving the ambulance in the following respects: failing to see what he should have seen, failing to keep a proper lookout, driving too fast for the traffic conditions, following too close to the preceding vehicle, and failing to apply brakes timely to avoid an accident. The Hidalgos have not alleged that any act or omission, related to the promotion of a patient's health or to the provider's exercise of professional expertise or skill, caused or contributed to her injuries.[6] Nor have they alleged Acadian was negligent in loading Mrs. Hidalgo into the ambulance or in failing to properly secure the stretcher or backboard, or both, once loaded into the ambulance. See Sewell v. Doctors Hospital, 600 So.2d 577, 580 (La.1992); Doe v. Medical Center of Louisiana, 612 So.2d 1050, 1052 (La.App. 4th Cir.), writ denied, 613 So.2d 1005 (La.1993).[7] The claims of negligence against Acadian pertain only to Cox's driving skills.
*119 We find the legislature did not intend to include negligence in driving an ambulance within the scope of the Act limiting liability for medical malpractice.[8] This conclusion is supported by a related provision, LSA-R.S. 40:1235, which provides immunity from civil damages for emergency medical technicians who are negligent in rendering professional services. After describing the immunity available to ambulance personnel performing medical duties, the statute pointedly states: "[n]othing herein shall relieve the driver of the emergency vehicle from liability arising from the operation or use of such vehicle." LSA-R.S. 40:1235. Acadian contends by including this disclaimer in the Act, the legislature tacitly admitted that such acts would otherwise be covered by the immunity provision. On the contrary, we are convinced this sentence was included to emphasize the obviousnamely that driving an ambulance is not the kind of emergency medical care or medical duty which the legislature sought to immunize from liability.
Further support for this interpretation is in the Act's definition of malpractice, which specifically includes the "handling of a patient, including loading and unloading of a patient," yet does not include any reference to transport of a patient. LSA-R.S. 40:1299.41(A)(8). A maxim of statutory interpretation is "expressio unius est exclusio alterius," the expression of one thing implies the exclusion of another. The references to loading and unloading of patients in the statute clearly refer to activities customarily performed by ambulance attendants. By including these words, the legislature evidenced its intent to differentiate these activities from transport, although that is an activity very commonly associated with ambulances.
Since the Hidalgos' petition states a cause of action for ordinary negligence in driving a motor vehicle, as opposed to a breach of a duty related to the promotion of a patient's health or to the provider's exercise of professional expertise or skill, we conclude that the Medical Malpractice Act is inapplicable to the Hidalgos' claims against Acadian. Thus these claims did not have to be addressed first by a medical review panel and the district court properly denied Acadian's exception raising the objection of prematurity.

Decree
For the foregoing reasons, the judgment of the district court is affirmed and costs of this appeal are assessed to Acadian Ambulance, Cox and Insurance Company of North America.
AFFIRMED.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The court granted the exception of improper venue and gave the Hidalgos leave to amend their petition to show that venue was proper in Livingston Parish. The Hidalgos amended their petition to show they were residents of and domiciled in Livingston Parish. The venue issue is not before this court.
[3] We note at the outset that the Act also limits the liability of qualified health care providers with respect to such claims. LSA-R.S. 40:1299.42(B). The Act's limitations are special legislation in derogation of the rights of tort victims. Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). As such, any ambiguities in the Act should be strictly construed against coverage. Hutchinson v. Patel, 93-2156 at 5, 637 So.2d at 420.
[4] LSA-R.S. 40:1299.41(1) states: "[n]othing in this Part shall be construed to make the patient's compensation fund liable for any sums except for those arising from medical malpractice."
[5] The Louisiana Legislature enacted the Medical Malpractice Act in 1975 in response to a perceived medical malpractice insurance "crisis." Hutchinson v. Patel, 93-2156 at 3, 637 So.2d at 419; Galloway v. Baton Rouge General Hospital, 602 So.2d 1003, 1005 (La.1992). The legislature intended the Act to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Hutchinson v. Patel, 93-2156 at 3, 637 So.2d at 419.
[6] Acadian argues its "profession" includes transport of patients and therefore rendering of professional services includes driving the ambulance. However, this argument expands the generally accepted definition of the word "professional" beyond the intent of this act, which is focused on medical and health care services.
[7] Any such allegations would be covered by the Act and would have to first be brought to a medical review board before any evidence of such actions could be admitted at the trial of this case. See Sewell v. Doctors Hospital, 600 So.2d at 581 (Hall, J., concurring).
[8] Medical malpractice insurance policies typically insure health care providers against claims arising from the rendering or failure to render professional services. Hutchinson v. Patel, 93-2156 at 8, 637 So.2d at 422. Medical malpractice insurance rates will not be affected by claims arising from the ambulance service's employee driving the ambulance. Driving is not conduct related to health care or professional services rendered or which should have been rendered, and therefore the typical medical malpractice insurance policy would not provide coverage. See Id. We do not believe the legislature intended to control the rising costs of medical services by limiting health care providers' liability for the acts at issue in this case. These actions would more appropriately be addressed by legislation targeting automobile liability insurance.