Darrell GRAHAM,

v.

**FREEPORT SULPHUR COMPANY et al.**

Civil Action No. 96–3352.

United States District Court, E.D. Louisiana.

April 11, 1997.

George Warren Byrne, Jr., Randy Jay Ungar, Randy J. Ungar & Associates, Inc., New Orleans, for Darrell Graham.

William Carl Shockey, James Elwood Moore, Jr., Shockey & Ziober, Baton Rouge, for Acadian Ambulance Service.

Donald Richard Abaunza, Carol Welborn Reisman, Liskow & Lewis, New Orleans, for Freeport McMoran Resource Partners, Ltd. Partnership.

Scott Rodgers Wheaton, Jr., Claude Frederick Bosworth, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, for Seahorse Marine Inc., Plaisance Marine Inc., LaSalle Offshore Inc.

## ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is defendant Acadian Ambulance Service, Inc.'s ("Acadian") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

Plaintiff alleges in the complaint that he worked for TCB Industries ("TCB") as an operator and was assigned to defendant Freeport Sulphur Co.'s ("Freeport") Grande Isle Sulphur Mine Platform. On March 22, 1996, plaintiff contends that he injured his left ankle and leg in the course of his employment on this platform. Plaintiff was referred for treatment to an Acadian medic aboard the platform who plaintiff alleges was under contract with Freeport to provide medical services. Despite his complaints of pain, plaintiff contends that the Acadian medic sent him back to work. In addition, plaintiff alleges that on March 27, 1996 while offloading a vessel owned by defendant La Salle Boat Lines ("La Salle"), plaintiff tripped over a rope left on deck by one of La Salle's employees and aggravated his ankle and leg injuries. Plaintiff argues that as a result of defendants' negligence, he sustained permanent and disabling injuries to his leg and ankle. On January 13, 1997, plaintiff filed his first Supplemental Amended Complaint, adding Seahorse Marine Inc., Plaisance Marine Inc. and La Salle Offshore Inc. as additional defendants. On March 17, 1997, the Court granted Plaintiff's Motion to Dismiss La Salle from the suit.

Plaintiff has alleged against Acadian a claim for medical malpractice and a claim against Freeport for negligence and failure to provide plaintiff with adequate medical care, basing jurisdiction on diversity of citizenship, general maritime law or alternatively on section 905(b) of the Longshoremen and Harbor Workers' Compensation Act.

## ANALYSIS

Acadian argues that since plaintiff was injured on a fixed offshore platform located in the outer Continental Shelf, the Court should apply Louisiana law as surrogate federal law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). Acadian further contends that it is a qualified health care provider under the Medical Malpractice Act ("the Act") which requires plaintiff to bring his malpractice claim before a medical review board before filing suit. Since plaintiff has not brought his claim before a medical review panel, Acadian argues that plaintiff's claims against it should be dismissed.

### 1. The OCSLA

The jurisdictional grant of OCSLA provides:

Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals . . .

43 U.S.C. § 1349(b)(1).

■ The Court's first determination is whether the OCSLA applies to plaintiff's claims against Acadian. In order for the OCSLA to apply, two requirements must be satisfied. *Tennessee Gas Pipeline v. Houston Cas. Ins.*, 87 F.3d 150, 154–55 (5th Cir. 1996). First, the defendant must be conducting an operation, i.e. some physical act on the outer Continental Shelf ("OCS"). *Id.* The Fifth Circuit found that a platform affixed to the OCS which was used to extract and transport minerals from the OCS satisfied the physical activity requirement. *Id.* at 154. Second, the accident must arise out of or be in connection with Freeport's operation on the OCS. *Id.* at 155. The Fifth Circuit has

used a "but for" test when analyzing this second criteria. *Id.; Recar v. CNG Producing Co.,* 853 F.2d 367, 369 (5th Cir.1988).

■ Although plaintiff does not assert any claims based upon OCSLA, the Fifth Circuit has found that OCSLA will still apply to the case if OCSLA's requirements are satisfied. *Tennessee Gas Pipeline,* 87 F.3d at 152. Here, Acadian argues that the accident occurred on the OCS and that although discovery has yet to be commenced, the platform is clearly adjacent to the State of Louisiana. In response, plaintiff asserts that he was working on Freeport Sulphur's Grande Isle Sulphur Mine Platform when the Acadian medic examined him (the complaint, ¶ 2) and that Freeport's Grande Isle Sulphur Mine Platform is a fixed offshore platform. (See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss) In addition, plaintiff has not disputed any of defendant's factual assertions in his *Memoranda of Law.* From defendant's undisputed allegations and the facts alleged in the complaint, it appears that Freeport is in the business of mining and developing sulphur from the OCS, satisfying the first criteria. As to the second requirement, plaintiff would not have been injured and sued defendants but for Freeport's operation on the OCS. Accordingly, the OCSLA applies to this case.

■ To the extent that it is not inconsistent with federal law, the OCSLA adopts the law of the adjacent state. See 43 U.S.C. § 1333(a)(2)(A); *Solet v. CNG Producing Co.,* 908 F.Supp. 375, 377 (E.D.La.1995). To decide whether state law applies under the OCSLA, three conditions must be satisfied: 1) the controversy must arise on a situs covered by the OCSLA (i.e. the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law. *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1120 (5th Cir.1992); *Union Texas Petroleum Corp. v. PLT Eng'g,* 895 F.2d 1043, 1047 (5th Cir. 1990).

■ It is clear from the complaint that the alleged accident occurred on Freeport's Grande Isle Sulphur Mine Platform, a fixed offshore platform. *See Hollier v. Union Texas Petroleum Corp.,* 972 F.2d 662, 664(5th Cir.1992) (finding that a fixed platform is an artificial island within the meaning of the OCSLA). Accordingly, the first requirement is satisfied.

In determining whether federal maritime law applies by its own force, the Supreme Court in *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) stated that the purpose of the OCSLA was to define a body of law applicable to the OCS. *Id.* at 355–58, 89 S.Ct. at 1837–38. The Court further commented that even if admiralty law would have applied to deaths on the OCS, the legislative history of the OCSLA demonstrates that Congress did not intend for that to happen. "The legislative history of the Lands Act makes it clear that these structures were to be treated as islands or as federal enclaves within a landlocked State, not as vessels." *Id.* at 361, 89 S.Ct. at 1840. The Supreme Court again addressed the issue of OCSLA's jurisdiction in *Offshore Logistics Inc. v. Tallentire,* 477 U.S. 207, 215–17, 106 S.Ct. 2485, 2491, 91 L.Ed.2d 174 (1986). In *Tallentire,* the Supreme Court stated that the intent behind the OCSLA was to treat artificial structures as federal enclaves, not as vessels because "maritime law was deemed inapposite to these fixed structures." *Id.* In that case, two platform workers were killed in a helicopter which was transporting the workers from the platform to the shore. The Supreme Court found that the OCSLA did not apply to the case because 1) the accident occurred miles away from the platform and 2) federal maritime law applied on its own force to the deaths of the two workers while at sea. *Tallentire,* at 217–19, 106 S.Ct. at 2492; *Union Texas Petroleum v. PLT Engineering,* 895 F.2d 1043, 1050 (5th Cir.1990). The Supreme Court commented that admiralty jurisdiction applied because the helicopter "was engaged in a function traditionally performed by a vessel, the ferrying of passengers from an island to shore." *Tallentire,* at 219, 106 S.Ct. at 2492.

The Court finds that maritime law does not apply on its own force to plaintiff's medi-

cal malpractice claims against Acadian. Since the alleged torts occurred on a fixed platform, not on an adjoining vessel or on the high seas, the defendant has satisfied the first prong of the *Tallentire* test. As to the second part of the *Tallentire* test, administering medical treatment is not an activity which courts have found to be traditionally maritime. Instead, many courts have found that medical malpractice is a matter of local and state concern. *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413, 1420 (W.D.La.1988). "We can find absolutely no support for the proposition that an ordinary, private, on-shore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is *state* law which controls in cases such as this." *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1038 (5th Cir.1982). *See also Penn Tanker Co. v. U.S.,* 409 F.2d 514 (5th Cir. 1969) (state law applied to third party claim against hospital); *McCann v. Falgout Boat Co.,* 44 F.R.D. 34 (S.D.Tex.1968) (shipowner's third-party claim against doctor arises under state law). Although the above cited cases involved doctors or hospitals and not ambulance medics, medical malpractice and negligence were the principal issues of these cases. Moreover, by passing the Act, the Louisiana Legislature has indicated Louisiana's interest in the uniform treatment of medical malpractice claims. *Harrison,* 679 F.Supp. at 1421.

As to the last requirement regarding whether state law should apply as surrogate federal law, the Court has discovered no federal law which would conflict with the Act. Moreover, as explained above, the Court has found that medical malpractice is a matter of local and state concern. Given these findings, the Court determines that the OCSLA applies to plaintiff's claims against Acadian and that Louisiana state law applies as surrogate federal law.

### 2. The Medical Malpractice Act

Before filing a lawsuit, the Act requires a person alleging a malpractice claim against a qualified health care provider to submit the claim to a medical review board. L.S.A.–R.S. 40:1299.47(A) and (B); R.S. 40:1299.41(E). In order to be qualified, a health care provider must file proof of financial responsibility and pay the annual surcharge as required by the statute. L.S.A.–R.S. 40:1299.42(A). For self insured health care providers, qualification is effective when the commissioner accepts proof of financial responsibility and the payment of the surcharge. L.S.A.–R.S. 40:1299.42(A). In addition, Louisiana courts have held that health care providers must qualify for coverage under the Act before the alleged tortious conduct was committed in order to receive coverage under the Act. *Abate v. Healthcare Intern., Inc.,* 560 So.2d 812 (La.1990).

Freeport argues that Arcadian was not a qualified health care provider at the time of the tortious conduct, March 22, 1996. However, Acadian has submitted a Certificate of Enrollment from the Louisiana Patients' Compensation Fund completed by an employee on November 14, 1996 which certifies that Arcadian was a qualified health care provider, pursuant to La. R.S. 40:1299.41 *et seq.,* from October 1, 1995 through October 1, 1996 and from October 1, 1996 through October 1, 1997. This certificate clearly demonstrates that Acadian was a qualified health care provider at the time of the alleged tortious act. In addition, a Louisiana court has recently considered and rejected Freeport's argument which was asserted against Acadian in state court. In *Hidalgo v. Wilson Certified Exp., Inc.,* 676 So.2d 114 (La.App. 1 Cir.1996), the court found that Acadian was covered under the Act for an accident which occurred on November 29, 1992 since a certificate of enrollment completed by an employee of the Compensation Fund on November 3, 1993 indicated that Acadian was certified as a qualified health care provider from October 1, 1992 through October 1, 1994. *Id.* at 117. Given Acadian's certificate and the decision in *Hidalgo,* the Court finds that Acadian is covered by the Act at the time of the events alleged in the complaint.

Plaintiff argues that Arcadian is a qualified health care provider under the Act but only as to ambulance services. Under the Act, a health care provider is defined as:

a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist or any non profit occupational therapist, psychologist or any non profit facility considered tax exempt . . . L.S.A.–R.S. 40:1299.41(A)(1).

The *Hidalgo* court also addressed plaintiff's argument. The Court found that "in general, any conduct by a health care provider complained of by a patient is properly within the scope of the Act if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability." *Id.* at 117 (citing *Rogers v. Synthes, Ltd.,* 626 So.2d 775, 777 (La.App. 2nd Cir.1993)). The *Hidalgo* court additionally held that the plaintiff's claims against Acadian arising from medical malpractice were covered by the Act while claims arising from Acadian's negligent driving were not. *Id.* 117–118.

Here, plaintiff's claim against Acadian arises from Acadian's alleged misdiagnosis of plaintiff's leg and ankle injuries and are therefore covered by the Act. Since plaintiff has not first submitted his claims against Acadian to the medical review panel for review, the Court dismisses plaintiff's claims against Acadian as premature pending review by the medical review panel. Accordingly,

IT IS ORDERED that defendant Acadian's Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is GRANTED.