701 So.2d 696 (1997)
Clovis DUNN, Individually and as Natural Tutor of his Minor Children, Tomika Dunn and Marcus Dunn
v.
Linda Frazee BRYANT, Administratrix for the Estate of Sydney L. Bryant, M.D. and Louisiana Medical Mutual Insurance Company.
No. 96 CA 1765.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
Rehearing Denied November 12, 1997.
*697 Charles Owen Taylor, C. Scott Carter, Metairie, for Plaintiffs-Appellants Clovis Dunn, et al.
Herbert J. Mang, Jr., Janie E. Languirand, Mang, Batiza, Gaudin, Godofsky & Penzato, Baton Rouge, for Defendants-Appellees Linda F. Bryant and Louisiana Medical Mutual Ins. Co.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
The plaintiffs appeal from a district court judgment sustaining the defendants' dilatory exception raising the objection of prematurity in this medical malpractice action. For the following reasons, we affirm.

Facts and Procedural History
Dr. Sydney L. Bryant ("Dr.Bryant") was employed by the Stanocola Medical Clinic ("the Clinic") prior to his death. Dr. Bryant obtained professional liability insurance in the form of a claims-made policy issued by Louisiana Medical Mutual Insurance Company ("LAMMICO"). LAMMICO also acted as an agent for the Patient's Compensation Fund ("PCF") with respect to the collection of the annual PCF surcharge assessed in accordance with LSA-R.S. 40:1299.44. Annual premium and surcharge payments for 1994 were remitted to LAMMICO by the Clinic on Dr. Bryant's behalf. An annual surcharge payment for 1995 was also made by the Clinic on his behalf, but premium payments for that calendar year were made monthly for January through approximately July 1995. No insurance premium or surcharge payments were made on Dr. Bryant's behalf for 1996.
By letter dated June 23, 1995, the Clinic notified LAMMICO that Dr. Bryant had died *698 on May 28, 1995, and that he last saw patients on March 15, 1995. It inquired if Dr. Bryant's coverage could be terminated retroactively to his last work day. On June 28, 1995, LAMMICO informed the Clinic that Dr. Bryant's policy had been terminated effective March 16, 1995, due to his permanent disability. Effective March 16, 1995, Dr. Bryant's policy was amended by an "Extended Reporting Endorsement" which provided coverage for all claims arising from medical incidents occurring during the period of July 1, 1986, to March 16, 1995. This endorsement reflected that the premium of $10,802 for such tail coverage was waived under the terms of the policy by LAMMICO because of Dr. Bryant's permanent disability. In light of the retroactive termination of the policy, the Clinic was owed a refund for premiums paid for the post-termination period. In its letter of June 28, 1995, LAMMICO also notified the Clinic that it would be entitled to a refund from the PCF, and LAMMICO sent a letter to the PCF requesting a refund on the Clinic's behalf. The PCF subsequently refunded a portion of the 1995 surcharge payment that had been remitted on Dr. Bryant's behalf.
On October 31, 1995, Clovis Dunn ("Dunn") filed with the PCF a complaint of medical negligence against Dr. Bryant and various defendants regarding the December 1994 treatment of his wife, Gwendolyn Dunn. By letter dated November 16, 1995, the PCF notified Dunn that Dr. Bryant was enrolled in the PCF, had insurance with LAMMICO, and had coverage for the period from January 1, 1994, through March 16, 1995. On March 4, 1996, Dunn, individually and as natural tutor of his two minor children, filed a negligence action in district court against LAMMICO and Linda Frazee Bryant ("Ms. Bryant"),[1] administratrix for the estate of Dr. Bryant, seeking damages for the death of his wife which allegedly occurred as a result of Dr. Bryant's professional negligence.
Ms. Bryant and LAMMICO responded by filing an exception raising the objection of prematurity. Essentially, they asserted that Dr. Bryant was a qualified health care provider and that Dunn's action against him is governed by the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq. ("the Act"). Since Dunn had not first allowed his claim to be evaluated by a medical review panel as required by LSA-R.S. 40:1299.47, Ms. Bryant and LAMMICO argued the lawsuit filed in district court was premature.
In written reasons, the district court sustained the exception raising the objection of prematurity, finding that LAMMICO provided insurance coverage to Dr. Bryant for any claim made from a medical incident occurring between July 1, 1986, and March 16, 1995, that Dr. Bryant was a qualified health care provider at the time this claim was filed, and that Dr. Bryant's succession was covered by the Act since Dr. Bryant would have otherwise been covered, except for the fact that he was now deceased. Dunn appeals the district court's judgment sustaining the exception of prematurity and dismissing his petition.
On appeal, Dunn argues the Act does not permit a physician's estate to be a "qualified health care provider" and that coverage under the Act is afforded to a qualified health care provider under a claims-made policy only when the insurance policy is in effect and the PCF surcharge is paid, both at the time of the alleged tort and at the time the claim for malpractice is made.[2] Thus, because the surcharge was not paid at the time the claim was made, he submits this lawsuit is not premature even though the claim was not previously reviewed by a medical review panel. Dunn seeks to have the judgment sustaining the exception of prematurity reversed.

Standard of Review
As the facts are not disputed with respect to this appeal, the issue before this court is whether the trial court correctly interpreted and applied the law. Appellate review of questions of law is simply review of *699 whether the trial court was legally correct or legally incorrect. Hidalgo v. Wilson Certified Express, Inc., 94-1322 (La.App. 1st Cir. 5/14/96), 676 So.2d 114, 116.

Prematurity
LSA-C.C.P. art. 926 provides for the dilatory exception of prematurity. Prematurity is determined by the facts existing at the time suit is filed. Hidalgo, 676 So.2d at 116. The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Hidalgo, 676 So.2d at 116; see Jones v. Crow, 633 So.2d 247, 249 (La.App. 1st Cir.1993). Generally, the person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review. Hidalgo, 676 So.2d at 116.
The Act provides such a mechanism in that it requires all medical malpractice claims against covered health care providers to be submitted to a medical review panel prior to filing suit in any court. LSA-R.S. 40:1299.47(B). This administrative procedure affords the medical review panel an opportunity to render its expert opinion on the merits of a complaint. Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, 419. If an action against a health care provider covered by the Act has been commenced in court and the complaint has not been first presented to a medical review panel, an exception of prematurity must be sustained, and the claimant's suit must be dismissed. See LSA-C.C.P. art. 933; LSA-R.S. 40:1299.47(B)(1)(a)(i). Thus, this court must determine whether Dr. Bryant was covered by the Act as a qualified health care provider at the time Dunn's suit was filed.

Medical Malpractice Act
The Louisiana Legislature enacted the Medical Malpractice Act in 1975 in response to a perceived medical malpractice insurance "crisis." Hutchinson, 637 So.2d at 419. The legislature intended the Act to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Hutchinson, 637 So.2d at 419. To those ends, the Act confers upon qualified health care providers two principal advantages in actions against them for malpractice. First, the liability of a qualified health care provider for all malpractice claims for injuries to or death of any one patient may not exceed $100,000, and the total amount recoverable from all defendants and the PCF for all malpractice claims for injuries to or death of any one patient, exclusive of future medical care and related benefits, may not exceed $500,000 plus interest and costs.[3] LSA-R.S. 40:1299.42(B). Second, no action for malpractice against a qualified health care provider or his or her insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47; Hutchinson, 637 So.2d at 419. The Act's limitations on the liability of a health care provider are the result of special legislation in derogation of the rights of tort victims. Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). As such, any ambiguities in the Act should be strictly construed against coverage. Hutchinson, 637 So.2d at 420.
Health care providers may take advantage of these benefits only if they qualify under the Act by maintaining specified basic malpractice insurance or evidence of financial responsibility and by contributing a surcharge to the PCF. See Sewell, 600 So.2d at 578. These benefits are bestowed on health care providers for as long as they remain qualified under the Act. See Sewell, 600 So.2d at 578; see also LSA-R.S. 40:1299.45(A). The burden is on a defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the Act. Jones, 633 So.2d at 250.

*700 Discussion

LSA-R.S. 40:1299.41(A)(1) defines "health care provider" for the purposes of the Act as follows:
a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C.A. § 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee or agent thereof acting in the course and scope of his employment.
In the instant case, Dunn does not dispute that Dr. Bryant was a "health care provider" under LSA-R.S. 40:1299.41 in that he was a licensed physician prior to his death. Dunn contends the Act is inapplicable in this case since neither the estate of Dr. Bryant nor his succession representative are defined as a health care provider. On the other hand, Ms. Bryant and LAMMICO argue LSA-C.C.P. art. 734 merely facilitates the process through which obligations of the deceased are enforced and should not be used to subvert the substantive provisions of the Act.
The following articles of the Louisiana Code of Civil Procedure set forth the pertinent law with regard to the proper party defendant in a suit filed against a succession. LSA-C.C.P. art. 734 provides:
Except as otherwise provided by law, including but not limited to Articles 2641 and 2674, the succession representative appointed by a court of this state is the proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.
LSA-C.C.P. art. 3249 provides:
The succession representative shall defend all actions brought against him to enforce claims against the succession, and in doing so may exercise all procedural rights available to a litigant.
The petition alleges a cause of action against Dr. Bryant, but names Ms. Bryant as a defendant in her capacity as the succession representative of Dr. Bryant's estate. The alleged negligent acts were committed by Dr. Bryant while he was practicing medicine. Except for his death, Dr. Bryant would have been the proper party defendant in an action for any such medical negligence. LSA-C.C.P. art. 734 simply designates who shall be the proper party defendant in an action to enforce an obligation of a deceased or of his succession when it is under administration. Matherne v. Estate of Matherne, 341 So.2d 1254, 1256 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1072 (La.1977). Under the facts of this case, whether the succession representative or the succession qualifies as a health care provider under the Act is irrelevant. The initial focus must instead be placed on the status of the deceased as a qualified health care provider from the time of the alleged tort to the moment of his death, because his actions are the subject of this lawsuit.[4]
LSA-R.S. 40:1299.42(A) sets forth the following requirements for qualification under the Act:
To be qualified under the provisions of this Part [the Medical Malpractice Act], a health care provider shall:

*701 (1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
Thus, to qualify, a health care provider must file the type of proof of financial responsibility described in Subsection "E" of LSA-R.S. 40:1299.42[5] and pay the annual PCF surcharge levied on the health care provider according to LSA-R.S. 40:1299.44. Abate v. Healthcare International, Inc., 560 So.2d 812, 816 (La.1990). For health care providers other than self-insureds, qualification under the Act is effective at the time the malpractice insurer accepts payment of the surcharge. LSA-R.S. 40:1299.42(A)(3); Abate, 560 So.2d at 816-17; Jones, 633 So.2d at 251.
On the date of the alleged malpractice in December 1994, Dr. Bryant had insurance with LAMMICO on a claims-made basis and LAMMICO had accepted payment of the annual PCF surcharge for 1994. Furthermore, payment of the annual PCF surcharge for 1995 had been accepted by LAMMICO and premium payments for that calendar year were current at the time of Dr. Bryant's death on May 28, 1995. Therefore, it is clear that Dr. Bryant was a qualified health care provider from the time of the alleged tort to the moment of his death.
Subsequent to Dr. Bryant's death, Dunn argues Dr. Bryant's qualification ceased once the PCF refunded the surcharge for the remainder of 1995. We must now determine if the requirements for qualification were satisfied after Dr. Bryant's death.
Generally, coverage under a claims-made policy is effective only if the negligent harm is discovered and reported within the policy term.[6]See Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478, 481 (La.1973); Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir. 3/27/97), 691 So.2d 1355, 1359. To maintain coverage upon termination of a claims-made policy, a health care provider is required to obtain additional insurance coverage for the negligent harm that occurred within the policy term, but was not discovered and reported until after the claims-made policy terminated. This is generally known as tail coverage.
Provision "o" of the "Conditions" section of Dr. Bryant's claims-made policy stated:
The period for reporting medical incidents which would have been covered under this Policy shall (without payment of additional premium) be extended forever if all charges due the Company have been paid and if the insurance provided to the insured ends due to:
(a) The insured's death, legal incompetence; or
(b) The insured's permanent total retirement from the practice of medicine either:
(1) After age 50 and 10 years with the company; or
(2) As a result of permanent disability.
The Company shall have the right to verify any claim of retirement or disability by examining the insured or the insured's records.
Dr. Bryant ceased practicing medicine after March 15, 1995, due to permanent disability, and he died on May 28, 1995. Pursuant to the quoted provision, Dr. Bryant's claims-made policy ended on March 15, 1995, and an extended reporting endorsement was issued effective March 16, 1995. In accordance with the policy provision, LAMMICO waived payment of the premium that would have otherwise *702 been due except for Dr. Bryant's permanent disability and death. In light of this endorsement, Dr. Bryant was afforded coverage for any medical incident occurring between July 1, 1986, and March 16, 1995, without regard to the date the incident was discovered and reported. As such, continuous financial responsibility for Dunn's claim was maintained after Dr. Bryant's death through his insurance coverage.
With respect to the requirement for payment of the surcharge, we note the mandate of LSA-R.S. 40:1299.44(A)(2)(d) that the PCF surcharge be collected on the same basis as premiums by each insurer. Because LAMMICO waived payment of its premium based on Dr. Bryant's permanent disability and death, no premium was collected by LAMMICO, and therefore, no surcharge was collected either. In fact, LAMMICO sent a letter to the PCF requesting a refund of the annual surcharge for the remainder of 1995 following Dr. Bryant's death, which request was honored by the PCF.
Dunn argues the PCF did not have authority to waive the statutory requirement that a health care provider pay a surcharge to qualify under the Act. LSA-R.S. 40:1299.44 provides for the creation, funding, and administration of the PCF. The powers and obligations of the PCF are outlined in this statute. LSA-R.S. 40:1299.44(D) provides for the creation of the PCF Oversight Board. This board has full authority under law for the management, administration, operation, and defense of the PCF in accordance with the provisions of the Act. LSA-R.S. 40:1299.44(D)(2)(a). Although the Act does not expressly authorize or prohibit the waiver of the PCF surcharge payment when a physician dies or becomes permanently disabled, it authorizes the PCF Oversight Board to adopt and promulgate such rules, regulations, and standards as it may deem necessary or advisable to implement the authority, and discharge the responsibilities, conferred and imposed on it by the Act. LSA-R.S. 40:1299.44(D)(3). Therefore, the PCF possessed the requisite authority to waive the payment of the surcharge in the event of the health care provider's death or permanent disability.
The evidence reveals the PCF did just that. Richard L. Nauman, LAMMICO's director of underwriting and marketing, testified that the PCF had a rule that followed the same procedure as LAMMICO's extended reporting endorsement, which converted PCF's coverage from a claims-made type to an occurrence type without charge in the event of permanent disability or death.
After carefully reviewing the entire record in this matter, we conclude the district court did not err in finding that the alleged malpractice of Dr. Bryant was covered by the Act when the complaint was filed with the PCF on October 31, 1995. As such, Ms. Bryant and LAMMICO proved they were entitled to have Dunn's claim evaluated by a medical review panel. Therefore, we conclude the district court was legally correct in sustaining the dilatory exception pleading the objection of prematurity.

Decree
For the above reasons, the district court's judgment sustaining the exception of prematurity is affirmed. Dunn is cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] Dunn alleged that Ms. Bryant, as administratrix for her husband's estate, is legally responsible for the negligence of Dr. Bryant.
[2] In essence, Dunn argues the Act is not applicable to his claim, and therefore, his recovery is not limited to $500,000.
[3] Damages for medical malpractice claims in excess of $100,000 up to a limit of $500,000, exclusive of future medical care and related benefits, can be recovered from the PCF. LSA-R.S. 40:1299.42(B); Pendleton v. Barrett. 95-2066 (La.5/31/96), 675 So.2d 720, 724.
[4] Otherwise, once a "qualified health care provider" dies, neither the alleged tort victim nor the succession representative would ever benefit from the protections afforded by the Act. Such a result would clearly be contrary to the implicit intention of the legislature and the purpose of the Act.
[5] Proof of financial responsibility is not an issue in this case because a policy of malpractice liability insurance in an amount of at least $100,000 per claim was provided by LAMMICO.
[6] A claims-made policy is to be contrasted with an occurrence policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478, 481 (La.1973); Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir. 3/27/97), 691 So.2d 1355, 1359.