KUHN, Judge.
This appeal involves a dispute between a corporation and an individual who claims ownership of two hundred shares of the corporation’s no par value common stock. *1099 Plaintiff, Permafill Corporation of Louisiana (“PCLA”)[1], filed suit against defendant, Joe Atiyeh, seeking a declaratory judgment recognizing PCLA as the true owner of the stock. Alternatively, PCLA asserted that Atiyeh had breached a contract between himself and PCLA, which obligated him to pay $500,000.00 to PCLA.
Atiyeh filed a reconventional demand against PCLA alleging that a building owned by Atiyeh and used as an office by PCLA was damaged by a fire caused by the negligence of William C. Smith, a shareholder of PCLA. The reconventional demand asserted PCLA is hable for property damages resulting from the fire pursuant to the doctrine of respondeat superior. Upon PCLA’s motion, the trial court ordered the severance of the principal and reconventional demands. Ati-yeh’s reconventional demand did not include a prayer that he be declared owner of the PCLA stock.
The trial court determined Atiyeh was the rightful owner of the two hundred shares of stock, but ordered defendant to pay the sum of $50.00 per share within thirty days of the September 3, 1996 judgment. On November 5, 1996, the trial court signed a judgment which denied plaintiffs motion for a new trial, but also amended the original judgment to provide that defendant was the rightful owner of the two hundred shares of PCLA stock on the condition that he pay plaintiff the sum of $150.00 per share within thirty days of the judgment. Atiyeh 13appealed and PCLA has answered the appeal. We reverse the trial court’s September 3,1996 judgment and render a judgment dismissing PCLA’s suit.[2]
On appeal, Atiyeh asserts the trial court erred: 1) in modifying the original judgment after denying plaintiffs motion for a new trial; and 2) in finding that he must pay any amount for the stock. Atiyeh urges he is the rightful owner of the stock for which he has paid consideration. In its answer, PCLA asserts that although the judgment in its favor ordering Atiyeh to pay a sum for each share is correct, the court erred in placing an abusively low value on the stock. PCLA contends the trial court should have ordered Atiyeh to pay $500.00 for each share of stock.
I. FACTS AND PROCEDURAL BACKGROUND
William Smith invented and patented a “permafill” pothole repair process whereby a mixture of gravel and plastic material is used to fill potholes in concrete streets. During December of 1991, Smith’s stepson, Eric Moll, traveled from Texas to Louisiana to meet with Atiyeh to discuss marketing the process in Louisiana. Atiyeh was interested in the process and contacted Pete Clements.[3] In February of 1992, Clements set up a pothole repair demonstration for officials of the City of Baton Rouge and the State of Louisiana. Moll returned to Houston, Texas, to discuss with Smith the idea of establishing a Louisiana corporation for the purpose of using the patented process to engage in the pothole repair business in Louisiana. Ati-yeh, Clements, Moll and Smith were interested in the venture. 14Puring February and April of 1992, Moll and Smith returned to Louisiana to meet with Atiyeh and Clements to discuss the funding of the corporation, equipment that would be needed for the corporation, salaries to be paid to Moll and Smith, and other details regarding the incorporation of PCLA.
*1100 Clements arranged for Richard Mary, an attorney, to prepare documents for the incorporation of PCLA. Mary met with Clements, Atiyeh, Moll and Smith to discuss the details of the incorporation. In Mary’s deposition testimony, he explained that Smith was not willing to transfer the patent “without being guaranteed some compensation.” Clements and Atiyeh were not willing to guarantee a large payment without knowing whether the venture would be feasible. Mary attempted to create a corporate structure to accommodate these concerns.
On May 31, 1992, Permafill, Inc. (“Perma-fill”) [4], a Texas corporation, and PCLA executed a license agreement, whereby PCLA was granted a license[5] to market the pothole-filling process statewide in Louisiana. Pursuant to the terms of the license agreement, Permafill was to receive fifty percent of the common stock of PCLA as consideration for the granting of the license. PCLA was incorporated on that same day.
Pursuant to the articles of incorporation, the corporation had the authority to issue one thousand shares of common stock with no par value and ten thousand shares of preferred stock with a par value of one thousand ($1,000.00) dollars per |sshare. The minutes of the first meeting of incorporators of PCLA, dated May 31, 1992, provided in part:
That One thousand (1,000) shares of common stock (Class A) of the corporation shall be issued to the stockholders in consideration of the receipt of One Thousand and No/100 ($1,000.00) Dollars, cash or notes or one and no/100 ($1.00) Dollar per share.
The minutes also provided that Clements, Atiyeh, Smith, and Moll were elected as directors of the corporation and that the following shares were issued for the following consideration:
The Clements Corporation -250 shares for the sum of $250.00 (cash)
Joseph Atiyeh -250 shares for the sum of $250.00 (cash)
Permafill, Inc. -250 shares for the sum of $250.00 (cash)
Eric Moll -250 shares for the sum of ,$250.00 (cash)
Mary explained he was directed that half of the shares that were to be issued to Per-mafill pursuant to the terms of the license agreement were to be issued instead to Moll. Stock certificates representing the two hundred fifty shares were issued to each owner. Smith testified that none of the shareholders actually paid the $250.00 at the time of incorporation. However, Smith stated he had incurred expenses of “a couple of hundred dollars” on behalf of PCLA while trying to form the corporation. Moll testified he and Smith did not put up any money for the incorporation of PCLA. Mary testified that Atiyeh and Clements each paid $1,250.00 for the incorporation fees. Prior to the incorporation of PCLA, Atiyeh spent $259.00 to rent a generator which was used for the “perma-fill” process demonstration to the State and City officials. After the incorporation of PCLA, Atiyeh spent $705.00 for Permafill signs, $718.69 for hotel lodging for people of the corporation and provided a rent-free, furnished office space for the corporation for approximately two years. According to Moll’s ^testimony, some time around January of 1993, Atiyeh also deposited approximately $5,000.00 in a bank account for PCLA’s use.
Employment contracts were executed on May 31, 1992. Pursuant to these agreements, PCLA hired Smith to serve as president of PCLA for a three year term at a salary of $4,500.00 per month, and PCLA hired Moll to serve as the field superintendent for a one-year term at a salary of $3,900.00 per month. The agreement between Smith and PCLA provided that if PCLA defaulted on its obligation to pay the designated salary, Smith had the right to *1101 cancel the license granted to PCLA pursuant to the license agreement.
Permafill USA, Inc. (“USA”), was also incorporated on May 31, 1992. The shareholders of USA were the same as the shareholders of PCLA, and the same number of shares were distributed to each shareholder for the same stated consideration. An agreement to purchase was also executed on the same date between Permafill and USA, pursuant to which USA agreed to buy the “permafill” patent for $250,000.00. The agreement provided that the purchase price would be paid within ninety days of the date of the agreement. The agreement provided USA the option of two, ninety-day extensions for the closing of the sale. The agreement was signed by Clements on behalf of USA and by Smith on behalf of Permafill. The trial testimony establishes that the sale of the patent between USA and Permafill never took place. On October 21, 1993, PCLA purchased the “permafill” patent from Permafill. Pursuant to the sale agreement, PCLA agreed to pay Smith the total sum of $250,000.00 to be paid at the rate of ten (10%) percent of PCLA’s gross receipts and revenues from the sales of services and/or products until paid in full with payments to be made on a monthly basis.
After the incorporation of PCLA, Smith and Moll moved to Louisiana in order to promote the business of the corporation. According to their testimony, Atiyeh had agreed to raise $250,000.00 in operating capital for PCLA as ^consideration for his two hundred fifty shares of stock. Except for the $5,000.00 which Atiyeh had deposited in a bank account for PCLA’s use, no additional funds were raised and the corporation lacked operating capital. Moll and Smith did not receive the salaries which PCLA had agreed to pay them pursuant to the employment contracts.[6]
As of approximately January of 1993, Moll believed Atiyeh had not satisfied his obligation to raise the $250,000.00 in operating capital and began making verbal demands for Atiyeh to relinquish his PCLA stock. Following a board meeting held during May of 1994, a written demand was made on Atiyeh for him to relinquish the stock. Although Atiyeh never relinquished any stock certificates, he did buy an additional five percent (fifty shares) of PCLA’s stock during 1993, and later sold one hundred shares of stock back to the corporation. After these transactions, he held two hundred shares of stock. The dispute on appeal is whether Atiyeh has paid adequate consideration for these two hundred shares of stock.
Moll testified that each of the four original shareholders had agreed to a particular commitment in order to earn his twenty-five (25%) ownership interest in PCLA. According to Moll, he was to work full-time for PCLA and was to be involved in the daily operations of the company, including training personnel regarding the “permafill” repair process. Smith was to supervise the whole project as president and to perform office work. Clements was in charge of putting contracts together, providing office space, and raising $250,000.00 to buy the “permafill” patent from Permafill. Atiyeh was supposed to raise $250,000.00 to be used as PCLA’s operating capital. Upon PCLA’s incorporation, the shareholders planned to start business in thirty days. According to Moll, Atiyeh represented ■ he | «would be able to raise the $250,000.00 within that time frame. Moll stated that Atiyeh and Clements were confident they could raise the money they had each committed to raise by selling the preferred shares of PCLA stock.
Moll explained that PCLA never maintained an office in Clements’ building. Rather, PCLA established its office in part of a building owned and furnished by Atiyeh. PCLA operated out of Atiyeh’s building until approximately May of 1994. The office was relocated shortly after a fire damaged Ati-yeh’s building.
As of February 1, 1993, Clements had not raised any money for the patent purchase and he agreed to relinquish the PCLA stock held by The Clements Corporation. On that date, The Clements Corporation sold the two hundred fifty shares of PCLA stock to PCLA *1102 for the sum of $963.00, an amount representing Clements’ initial investment in the corporation (according to the testimony of Mary). Moll explained the corporation needed the stock returned so that it could be sold to capitalize the corporation to obtain money needed for operating expenses, including salaries for Smith and Moll. Some of the recovered stock (representing twenty percent of the PCLA common stock) was sold for $5,000.00 a percentage point (a percentage point being equal to ten shares of stock) for a total sale of $100,000.00. Moll testified that PCLA’s board of directors voided Atiyeh’s stock but would prefer to have the stock returned so that it would be available for sale.
During July or August of 1994, Smith resigned as president and surrendered his PCLA stock. PCLA elected a new president, Bodo Claus, who agreed to work on a full time basis for two years for the consideration of twenty percent of PCLA’s common stock. Some of the shares formerly owned by Smith were sold to provide operating capital.
_[gSmith testified that when he initially met with Atiyeh regarding the business venture, Atiyeh represented that he had contacts, specifically with the City of Baton Rouge, that would be helpful to the business. Like Moll, Smith testified that Atiyeh received PCLA stock in exchange for his verbal promise to raise operating capital. He explained that the “permafill” business requires substantial financial capital. Atiyeh was to raise the working capital by selling PCLA’s preferred stock to investors or Atiyeh was supposed to invest his own money in PCLA.
During June of 1992, a private placement memo was prepared for the purpose of attracting potential investors to purchase PCLA’s preferred stock. Smith explained Atiyeh had failed to produce operating capital and demands were made for Atiyeh to relinquish his PCLA’s common stock. Smith testified he was never paid the salary he was supposed to receive as president.
The trial judge granted a motion for directed verdict in Atiyeh’s favor regarding PCLA’s claim to recover for “the cost of rent, utilities, telephone bills and all expenses incurred by [PCLA] to lease office space.” However, he stated he was “going to hold open the issue on damages.”
Atiyeh testified he claims ownership of two hundred shares of PCLA stock. He stated that he was contacted by Moll regarding the “permafill” process and that Moll was interested in having Atiyeh market the process. Atiyeh introduced Moll to Clements, who arranged the demonstration. Discussions about forming a Louisiana-based corporation ensued and Atiyeh was ultimately issued two hundred fifty shares of common stock. He stated he never agreed to finance the corporation by providing $250,000.00 or any amount of cash. He acknowledged there had been discussions about USA buying the patent right for the entire country for the price of $250,000.00, but that he did not agree to invest or raise that amount of money. He understood that PCLA had entered into a contract with |10PothoIe, Inc. (a company which he described as having political clout in Louisiana), whereby Pothole, Inc., would have the right to do work for PCLA. Moll and Smith wanted Atiyeh to relinquish some of the PCLA stock because they believed he would own too much when PCLA became the owner of the “entire patent rights for the whole country rather than just Louisiana.” Atiyeh refused to relinquish his stock but sold one hundred shares of PCLA stock back to the corporation for $10,000.00. He had previously purchased five percent of the PCLA stock for $12,000.00.
Mary also testified that when PCLA was formed, there was no discussion regarding any of the four shareholders having the obligation to provide working capital for the corporation. He explained that if such a discussion had taken place, he would have asked if the agreement should be memorialized in some form.
Mary Harb, Secretary/Treasurer of PCLA (a certified professional accountant who performed administrative work for PCLA and shareholder of twenty-five shares of PCLA common stock), testified that she attended the corporation’s board meetings held during 1993. She stated that during these meetings, there were no discussions regarding the *1103 financing or funding that Atiyeh was supposed to provide. She explained that after some tension developed between Atiyeh and Moll during 1994, Moll complained about Ati-yeh not raising the money. Since Harb was not present at the meetings held during 1992, she was not aware of what agreements were actually made between Smith, Moll, Atiyeh and Clements.
The trial court determined that based on the testimony of Mary and Harb, he was not convinced there was an agreement between the shareholders, whereby Atiyeh agreed to raise $250,000.00 in operating capital for PCLA. The court stated, “... I grant an involuntary dismissal ... based on that evidence. But I don’t know what to do with the stock that Mr. Atiyeh is going to wind up owing them.” InThe court further stated, “I don’t think anybody is lying. I think there was just some misconceptions and false anticipations or expectations, or interpretations.” At trial, PCLA argued that if Atiyeh was the owner of the stock, he should have to pay fair market value for it, asserting that no consideration had been exchanged for the stock.
Evidence was introduced regarding the valuation of PCLA stock. The minutes of a March 19, 1993 board of directors’ meeting for PCLA, which addressed short term goals of the corporation, were introduced into evidence. The minutes listed one of the short term goals of the company to be the sale of ten percent of the common stock at the price of $5,000.00 per one percent of common stock. Moll testified that the $5,000.00 value was based on the potential of the corporation, i.e., on the assumption that PCLA would bring in millions of dollars based on the potential of the industry. Harb also testified that during 1995, she had paid $5,000.00 for one percentage point (ten shares) of common stock. Some of the PCLA stock recovered from The Clements Corporation during February of 1993 (representing twenty percent of the PCLA common stock), was sold for $5,000.00 a percentage point for a total sale of $100,000.00.
While the valuation of the stock was being discussed, the trial court stated, “Yes, I don’t think [Atiyeh] should get it free.... But at the same time [the stock] wasn’t worth anything when he got his. It’s what it was worth when he got it.... It was worth less when he got his than when [Harb] got hers.” The trial court also recognized that Atiyeh had performed some services in exchange for his stock, specifically acknowledging the “first demonstration and the subsequent meetings with the city council members at his office” and the fact that Atiyeh provided an office and furniture for the corporation. The trial court also stated “the people who get in on the ground floor get in cheaper. Mr. Atiyeh just happened to be in the original four — .”
112Moll further testified that in the past few months prior to trial, PCLA had completed a contract for the City of Baton Rouge with a total gross revenue of $110,000.00. Prior to that contract, PCLA had only obtained several smaller contracts with the gross income from these contracts being less than $100,-000.00. PCLA had a net income of about $35,000.00 to $40,000.00, averaging less than $10,000.00 in net income for each year the corporation had been engaged in business. PCLA has never paid its shareholders a dividend and, at the time of trial, had debt in the amount of $350,000.00, representing the patent purchase and a loan to collateralize the corporation.
The trial court’s original judgment found Atiyeh to be owner of the two hundred shares of PCLA stock, but ordered him to pay $50.00 a share within thirty days or forfeit the shares to PCLA. Subsequently, the court signed another judgment which denied plaintiffs motion for new trial, but found Atiyeh to be owner of the shares and ordered him to pay $150.00 per share within thirty days or forfeit the shares to PCLA.
II. ANALYSIS
La. R.S. 12:52 provides in pertinent part:
A. Par value shares may be issued initially for such consideration expressed in dollars, not less than the par value thereof, as shall be fixed by the board of directors. Shares without par value may be issued from time to time for such consideration expressed in dollars as may be fixed by the board of directors ...; provided however, the consideration for such shares may be *1104 initially fixed by the incorporators.... All fully paid shares shall be nonassessa-ble.
******
C. The consideration for shares issued ... shall be paid in cash or in corporeal or incorporeal property, or services actually rendered to the corporation, the fair value of which is not less than the dollar amount of the consideration fixed for the shares, before the shares are issued. Upon payment of the consideration fixed therefor, such shares shall be considered as fully paid.
Atiyeh asserts that the incorporators of PCLA set the consideration for the stock at their initial meeting when they resolved that one thousand shares of | ^common stock (designated as no par value stock in the articles of incorporation) would be issued to the stockholders in consideration of the receipt of $1.00 per share. Atiyeh claims that his expenditure of $259.00 to rent a generator for the demonstration prior to the incorporation, in addition to his expenditure of thousands of dollars after incorporation, is consideration for the two hundred fifty shares that were issued to him.
PCLA argues that Atiyeh has an obligation to pay adequate and fair consideration for the stock. PCLA urges that “implicit in the issuance of the stock by [PCLA] to [Atiyeh] was the understanding that [Atiyeh] had a corresponding obligation to render services and to provide operating capital to [PCLA] having a value commensurate with the value of the stock....” PCLA asserts that “[t]he Louisiana Corporation Act clearly contemplates that the mere issuance of a stock certificate alone does not warrant a claim of ownership over the stock or the absence of a corresponding obligation to pay fair and adequate consideration for that stock.” PCLA urges that none of the incorporators actually paid $250.00 into an operating capital account for PCLA.
PCLA asserts the trial court correctly concluded that PCLA carried its burden of proving that Atiyeh has an obligation to pay PCLA the value of the stock, contending this finding is based upon the trial court’s application of the theory of unjust enrichment. PCLA urges that its stock maintains a value of $500.00 per share, and that the trial court should have ordered Atiyeh to pay the fair market value of $500.00 for each share of stock. In addressing the valuation of the stock, PCLA contends “the Trial Court did not look to the evidence establishing the value of [the] no par common stock at the time that it was issued to [Atiyeh], but, instead, took into consideration the debts and financial obligations of [PCLA] at the time of trial.” PCLA contends this was reversible error, contending “the value of the stock ... must be determined based on the evidence | -^establishing what a willing purchaser and what a willing seller would buy and sell the shares of stock for on the open market.” PCLA asserts the sale of PCLA stock (after it was recovered from Clements during February 1993) to outside investors for $500.00 per share is support for valuation of the stock at $500.00 per share.
The trial court found PCLA failed to prove that Atiyeh had agreed to raise $250,000.00 in operating capital as his consideration for the initial issuance of shares. However, in light of the trial court’s judgment ordering Atiyeh to pay for , the shares of stock, the court must have found Atiyeh failed to pay adequate consideration for the shares that were initially issued to him by PCLA. Additionally, the trial court apparently rejected Atiyeh’s argument that the initial shareholders/incorporators agreed the value of the stock was $1.00 per share upon formation of the corporation (despite the language of the minutes of the first meeting of incorporators of PCLA).
As plaintiff, PCLA had the burden of proving that Atiyeh failed to pay adequate consideration for the PCLA shares. See Thornton v. Thornton Farms, Inc., 526 So.2d 315, 319 (La.App. 3d Cir.1988). PCLA does not attack Atiyeh’s 1993 stock purchase. Rather, PCLA asserts that Atiyeh did not pay fair consideration for the stock initially issued upon the formation of the corporation. PCLA contends the trial court properly found that the ineorporators/shareholders did not actually agree on a valuation of $1.00 per share as represented in the May 31, 1992 *1105 minutes. Thus, in order for PCLA to advance its position that Atiyeh did not pay adequate consideration for the shares issued to him, PCLA was required to establish the valuation of the stock upon formation of the corporation.
We have conducted a complete review of the record, keeping in mind our appellate standards of review by which we are bound. The appellate court’s review of facts is governed by the manifest error— clearly wrong standard. Stobart v. State, through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). Appellate review of questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Dunn v. Bryant, 96-1765, p. 4 (La.App. 1st Cir. 9/19/97); 701 So.2d 696, 698-699.
Our review of the record establishes PCLA failed to prove the value of its common stock as of the date of its incorporation. Plaintiff failed to introduce testimony to establish a fair market value for the shares at the time of incorporation. The price at which the stock was sold during 1993 does not establish its value upon PCLA’s formation during 1992. No evidence was introduced regarding the market price of stock of corporations engaged in the same or similar line of business. Nor was evidence introduced regarding the economic outlook or earning capacity of this specific industry, other than general statements that there were a lot of potholes in need of repair in Louisiana and the general assumption of the shareholders (according to Moll’s testimony) that PCLA would bring in millions of dollars. At the time of PCLA’s incorporation, it owned only one asset, the license to use the “perma-fill” process in Louisiana. No evidence was introduced regarding the value of this license. The record does not establish that PCLA had any earning capacity as of its formation, i.e., there was no evidence that PCLA would necessarily have any business contracts upon its formation. See Moody v. Moody, 622 So.2d 1381, 1383-1385 (La.App. 1st Cir.1993) (wherein the court used a net economic worth method to value shares of community stock in lieu of using various intangible factors where there was no supporting information regarding the intangible factors).
Based on the evidence presented, we find the record neither contains sufficient evidence to determine a net economic worth of the corporation at the time of its formation nor does it contain sufficient information regarding other intangible factors upon which a value of the shares could be based. Accordingly, hfiWe find PCLA failed to establish a value for its shares as of the time of incorporation.
Although PCLA urges that none of the shareholders paid the stated $250.00 consideration for the initial issuance of shares when the corporation was formed, PCLA does not actually contest that Atiyeh has expended funds in excess of that amount on behalf of PCLA. As asserted by Atiyeh, he spent $259.00 for the rental of a generator which was used during the demonstration of the “permafill” process held prior to PCLA’s incorporation. He also paid $1,250.00, representing one-half of the incorporation fees charged by Mary. After the incorporation of PCLA, Atiyeh spent $705.00 for Permafill signs, $718.69 for hotel lodging and, according to Moll’s testimony, deposited approximately $5,000.00 into an account for PCLA’s use several months after its formation. Ati-yeh also provided furnished office space for PCLA’s use for nearly two years.
Due to the significant expenditures by Ati-yeh and considering the lack of evidence regarding the value of the shares when PCLA was incorporated, we conclude the trial court erred in finding that PCLA proved that Atiyeh had not paid adequate consideration for the shares at issue.
III. CONCLUSION
Accordingly, we reverse the trial court’s September 3, 1996 judgment and render a judgment dismissing PCLA’s suit. We deny the requested modification of the judgment sought by PCLA in its answer to Atiyeh’s appeal. All costs are to be paid by PCLA.
REVERSED AND RENDERED.

. Although the petition identifies the plaintiff as both Permafill Corporation and Permafill Corporation of Louisiana, the articles of incorporation identify the corporation as Permafill Corporation of Louisiana.

. Counsel for Atiyeh correctly asserts that the trial court improperly amended the September 3, 1996 judgment after having denied plaintiff’s motion for a new trial. La. C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time to alter the phraseology of the judgment or to correct errors of calculation, but not to alter the substance of the judgment. Even if the trial court had amended its original judgment pursuant to the granting of PCLA’s motion for new trial, our determination regarding the merits of the case would be the same. In that case, we would have reversed the November 5, 1996 judgment and rendered a judgment dismissing PCLA’s suit.

.Although the parties refer to Pete Clements, the record also contains references to John M. Clements. These references are apparently to the same person.

. The record establishes that William Smith and his wife, Patricia Smith, are shareholders of Per-mafill, Inc.

. Mary testified that to his knowledge the license to market the pothole-filling process in Louisiana was PCLA's only asset upon formation of the corporation. Later, PCLA received some cash funds from the sale of stock.

. Although eventually some funds may have been paid to Smith and Moll as salaries for services rendered for PCLA, the record does not establish the amounts.