PETTIGREW, J.
12In this survival and wrongful death action plaintiffs contend their decedent, while a patient at the defendant hospital, died following an evacuation of said hospital and eventual transfer to another facility. Plaintiffs further contend decedent, an oxygen recipient, allegedly died due to the hospital’s negligent failure to properly provide oxygen during and following the evacuation of its facility. The hospital, a qualified health care provider, responded with the filing of a dilatory exception raising the objection of prematurity and asserted that plaintiffs were required by law to submit their claims to a medical review panel. From a judgment maintaining the exception, plaintiffs have appealed.
FACTS
On February 17, 2008, Helen Williams was a non-ambulatory patient receiving oxygen at Pointe Coupee General Hospital (“PCGH”), in New Roads, Louisiana. At approximately 6 a.m., a nurse at PCGH smelled smoke, and upon going to investigate, noticed smoke emanating from a piece of equipment in the radiology department located on the hospital’s ground floor. Sprinkler systems were activated, and the fire department was summoned.
When the fire department arrived at approximately 6:15 a.m., the hospital’s sprinkler system had already extinguished the fire. The fire was confined to the radiology department and never reached the second floor patient area; however, in the minutes following the discovery of the fire, nurses, in an abundance of caution, decided to move patients to the east side of the hospital behind the fire doors.
After the fire had been extinguished, the decision was made to evacuate the hospital patients to an adjacent building pending an inspection by the Fire Marshall. At this point, physicians discussed which patients could be discharged, and which patients required care at a local nursing home. Ms. Williams was ultimately transported to Lakeview Nursing Home in New Roads, Louisiana, where she died later that day.
PACTION OF THE TRIAL COURT
Following Ms. Williams’ death, her children and grandchildren (hereinafter, “plaintiffs”) filed the instant litigation in the 18th Judicial District Court alleging (1) that but for the negligence of PCGH in failing to properly provide oxygen to Ms. Williams, she would not have die d; (2) that PCGH should have provided oxygen *568 for Ms. Williams as she waited in the hallway, once she was removed from the hospital, and certainly well before she was transported to the nursing home; and (3) that plaintiffs’ claim is grounded in general negligence (tort) and not medical malpractice, and therefore submission of the matter to a medical review panel is unnecessary.
In response to plaintiffs’ claim, PCGH filed a dilatory exception raising the objection of prematurity asserting that the claims set forth in plaintiffs’ petition are allegations of medical malpractice that must be submitted to a Medical Review Panel prior to the filing of a lawsuit in accordance with the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et seq. (“LMMA”).
Thereafter, plaintiffs filed their First Supplement Petition wherein they added three additional allegations (1) that the proximate cause of Ms. Williams’ death was PCGH’s failure to formulate and implement a quick and efficient plan for the evacuation of patients, particularly those on oxygen; (2) that PCGH failed to have a facility available for the transfer of patients in the event of a mandatory evacuation; and (3) that PCGH failed to design, construct, or maintain a facility in such a manner as to provide oxygen to patients being evacuated during an emergency.
On August 11, 2009, a hearing was conducted on the exception filed by PCGH. At the hearing, PCGH called Elaine Hurme, director of nurses at PCGH, who testified regarding procedures at PCGH as well as the events on the day of the fire. Ms. Hurme did not testify regarding Ms. Williams’ medical condition other than to confirm that Ms. Williams was non-ambulatory, bed-bound, and was transported out of the hospital during the evacuation process.
After listening to Ms. Hurme, and the arguments put forth by counsel, the trial court maintained PCGH’s exception as to prematurity and dismissed plaintiffs’ suit without 14prejudice finding that the LMMA requires that this matter be considered by a medical review panel before suit is filed.
From this judgment, plaintiffs have appealed.
ISSUE PRESENTED ON APPEAL
In connection with their appeal in this matter, plaintiffs put forth the following issue for consideration by this court:
1. Whether a hospital’s alleged inability during a fire to properly and quickly evacuate a patient, and failure to provide oxygen to a patient who requires oxygen, constitutes medical malpractice and falls within the provisions of the LMMA?
STANDARD OF REVIEW
As the facts are not disputed with respect to this appeal, the issue before this court is whether the trial court correctly interpreted and applied the law. Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. Dunn v. Bryant, 96-1765, p. 4 (La.App. 1 Cir. 9/19/97), 701 So.2d 696, 698-699, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752.
LAW AND ANALYSIS
Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action rather than defeat it. La.Code Civ. P. arts. 923 and 926. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. La.Code Civ. P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. *569 Houghton v. Our Lady of the Lake Hosp. Inc., 03-0135, p. 5 (La.App. 1 Cir. 7/16/03), 859 So.2d 103, 106. Evidence may be introduced to support or controvert the exception, when the grounds do not appear from the petition. La.Code Civ. P. art. 930. The objection of prematurity raises the issue of whether the juridical cause of action has yet come into existence because some prerequisite condition has not been fulfilled. Bridges v. Smith, 01-2166, p. 4 (La.App. 1 Cir. 9/27/02), 832 So.2d 307, 310, writ denied, 02-2951 (La.2/14/03), 836 So.2d 121. The objection contemplates that the action was brought prior to some procedure or assigned time, and is usually utilized in | Scases where the applicable law or contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. Plaisance v. Davis, 03-0767, p. 6 (La.App. 1 Cir. 11/7/03), 868 So.2d 711, 716, writ denied, 03-3362 (La.2/13/04), 867 So.2d 699.
Pursuant to the LMMA, all medical malpractice claims against qualified health care providers must be submitted to a medical review panel for consideration. See La. R.S. 40:1299.47(A)(1). No civil action against a qualified health care provider or its insurer may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to the LMMA. See La. R.S. 40:1299.47(B)(l)(a)(i). A request for a medical review panel is a prerequisite to and not the equivalent of a suit for medical malpractice. Boone v. State, through the Dep’t. of Health and Hosp., 97-321 p. 2 (La.App. 3 Cir. 3/6/98), 709 So.2d 300, 300, writ denied, 98-0945 (La.5/15/98), 719 So.2d 468.
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. See Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. If a lawsuit against a health care provider covered by the LMMA has been commenced in a court and the complaint has not been first presented to a medical review panel, the exception of prematurity must be sustained, and the claimant’s suit must be dismissed. Dunn, 96-1765 at 5, 701 So.2d at 699. The burden of proving prematurity is on the exceptor, in this case PCGH, who must show that it is entitled to a medical review panel because the allegations fall within the LMMA.
In its opinion in LaCoste v. Pendleton Methodist Hospital, L.L.C., 07-0008, p. 6 (La.9/5/07), 966 So.2d 519, 524, our supreme court, citing Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315, emphasized again that the LMMA and its limitations on tort liability for a qualified health care provider apply only to claims “arising from medical malpractice,” and that all other tort liability on the part of the qualified health care provider is governed by general tort law. In LaCoste, the supreme 16court repeated its oft stated precept that the LMMA’s limitations on the liability of health care providers for medical malpractice were created by special legislation in derogation of the rights of tort victims. LaCoste, 07-0008 at 7, 966 at 524. Accordingly, any ambiguity should be resolved in favor of the victim and against finding that the tort alleged sounds in medical malpractice. The limitations of the LMMA, therefore, apply strictly to cases of malpractice as defined in the LMMA. Id.
Pursuant to the LMMA, “malpractice” is defined as:
any unintentional tort or any breach of contract based on health care or profes *570 sional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. La. R.S. 40:1299.41(A)(13).
The LMMA further defines “tort” and “health care” as follows:
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
La. R.S. 40:1299.41(A)(22) (emphasis supplied).
“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components. La. R.S. 40:1299.41(A)(9).
In its opinion in Coleman, 01-1517 at 17-18, 813 So.2d at 315-316, our supreme court set forth six (6) factors to assist a court in determining whether a claim sounds in medical malpractice and must first be presented to a medical review panel. The supreme court utilized these factors again in its opinion in LaCoste, 07-0008 at 8, 966 So.2d at 524-525. Said factors are:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
|7(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
In the instant case, PCGH has the burden of proof as the exceptor. PCGH relies on the allegations as set forth in the plaintiffs’ original and first supplemental petition, the testimony of Ms. Elaine Hurme, director of nurses at PCGH, and a certified copy of PCGH’s certificate of enrollment in the Patient’s Compensation Fund. Accordingly, we must apply the Coleman factors to the evidence before us, and upon doing so, we conclude that the claims as asserted in the plaintiffs’ original and. supplemental petition fall within the purview of the LMMA, and thus the trial court properly sustained PCGH’s excep *571 tion as to prematurity and dismissed plaintiffs’ lawsuit.
(i) Whether the particular wrong is “treatment related” or caused by a dereliction of professional skill
Plaintiffs have alleged seven (7) negligent acts by PCGH, namely, (1) that as a result of a fire, when personnel at PCGH removed Ms. Williams from her room and placed her in the hallway to await evacuation, it failed to provide her with oxygen, although she was short-winded and in distress; (2) that after Ms. Williams was moved from the hospital to an outside building to await transportation, PCGH personnel again failed to provide Ms. Williams with oxygen; (3) that when PCGH personnel finally located an oxygen tank for Ms. Williams, said tank was empty; (4) that the cause of Ms. Williams’ death was PCGH’s failure to have in place and implement an efficient evacuation plan, particularly for those persons who required oxygen; (5) that PCGH failed to have a facility on site or a facility available in which to transfer patients in the event of a mandatory evacuation; (6) that PCGH failed to have a protocol for evacuating patients; and (7) that PCGH failed to design, construct, or maintain a facility in such a manner to have oxygen readily available for patients being evacuated during an emergency.
lain their brief to this court, plaintiffs claim the aforementioned acts do not result from the dereliction of any professional skill that is treatment related and as such do not require expert medical evidence to determine whether the appropriate standard of care was breached. Plaintiffs further claim no professional skill or licensing is required of a hospital to implement evacuation procedures that include the availability of oxygen.
PCGH responds with the argument the plaintiffs’ petition for damages “undeniably alleges that [Ms. Williams’] death was caused by a failure to render medical treatment as the result of a deficiency in medical skill, namely the failure to properly provide oxygen.” PCGH further asserts “[c]ommon sense indicates that a claim based on failure to provide enough treatment is clearly linked to treatment”, citing Coleman, 01-1517 at 22, 813 So.2d at 318. PCGH argues that the allegations contained in the original and amended petitions filed by the plaintiffs fail to allege that the unavailability of oxygen resulted from structural or electrical flaws of the hospital or its evacuation procedures. On the contrary, PCGH asserts that plaintiffs’ original petition alleges that oxygen was available and that the staff at PCGH failed to administer it properly and timely.
(ii) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached
In their brief to this court, plaintiffs urge that the instant facts “are sufficiently similar to those [presented] in LaCoste to support the conclusion that this case does not fall under the [L]MMA.” In LaCoste, our supreme court held that a hospital’s failure to provide life support to a patient who died following Hurricane Katrina was the result of structural/electrical failure of the facility and/or evacuation plan failures rather than a deficiency in professional medical skill. Accordingly, the supreme court concluded the claims as alleged in LaCoste did not fall within the provisions of the LMMA. Lacoste, 07-0008 at 16, 966 So.2d at 529.
PCGH points out in response that in LaCoste, the plaintiffs alleged a failure of the defendant hospital’s electrical supply. The plaintiffs in the instant case do not allege a failure of the oxygen supply to Ms. Williams, but rather that PCGH failed to “properly provide oxygen” to Ms. Williams *572 thereby causing her death. PCGH avers such allegations 19will require expert medical testimony as to whether oxygen was properly or improperly provided to Ms. Williams as well as expert medical testimony regarding whether the alleged failure to properly provide oxygen caused Ms. Williams’ death.
(iii) Whether the pertinent act or omission involved assessment of the patient’s condition
Plaintiffs contend the proper evacuation of individuals from a hospital involves a consideration of actions and inactions that are best testified to by experts in fire prevention and evacuation, not by doctors and nurses. Plaintiffs further contend a medical expert is not necessary to determine whether a hospital patient who is continually receiving oxygen should continue to require oxygen during an evacuation. According to plaintiffs, the failure of PCGH does not stem from the lack of an assessment of Ms. Williams’ condition, but rather from the lack of an efficient evacuation plan that insured patients who were on oxygen continued to receive oxygen during the evacuation.
In response, PCGH relies upon the hearing testimony of Ms. Elaine Hurme, director of nurses at PCGH. Ms. Hurme testified that on the day of the fire, patients at PCGH were evacuated and transferred based upon decisions made by medical personnel after consideration of the overall condition of the patient. Patients who were ambulatory wei-e evacuated first followed by non-ambulatory bed-bound patients such as Ms. Williams.
(iv) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform
In addressing the fourth criterion set forth in Coleman, plaintiffs claim that the allegations set forth herein do not claim a breach of duty in the context of a physician-patient relationship, but rather a failure to provide oxygen during an evacuation, a situation that plaintiffs claim is not part of normal medical care. Conversely, PCGH asserts that providing a patient with oxygen and evacuating said patient during an emergency clearly involves a patient-health care provider relationship and is within the scope of foreseeable activities expected of a hospital.
| in(v) Whether the injury would have occurred if the patient had not sought treatment
Plaintiffs in this matter clearly allege that Ms. Williams’ death was a direct result of improperly providing Ms. Williams with oxygen during her evacuation from PCGH. It cannot be disputed that the allegations made by the plaintiffs in this matter are directly related to the treatment of Ms. Williams at PCGH.
(vi) Whether the tort alleged was intentional
The parties do not address the final Coleman criterion as all allegations made by plaintiffs are of negligence, including professional negligence.
Accordingly, utilizing the factors set forth in Coleman we have applied the LMMA’s definition of medical malpractice to the facts alleged and the evidence presented, and conclude that plaintiffs’ claims fall within the LMMA and therefore must first be presented to a medical review panel pursuant to the procedures outlined by the LMMA. Until such time as plaintiffs’ complaints are properly reviewed by a medical review panel, the present litigation is premature. The trial court correct *573 ly sustained PCGH’s dilatory exception raising the objection of prematurity.
CONCLUSION
For the above and foregoing reasons, we affirm the judgment dismissing plaintiffs’ suit against Pointe Coupee General Hospital -without prejudice. All costs associated with this appeal are assessed against plaintiffs.
AFFIRMED.
CARTER, C.J., concurs.