# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0111

### DR. JAMES STENHOUSE

#### VERSUS

### LOUISIANA WOMEN'S HEALTHCARE ASSOCIATES, L.L.C., ET AL.

*consolidated with*

## 2025 CA 0112

### DR. JAMES STENHOUSE

#### VERSUS

### KIM SANGARI AND RICK CAPDEVIELLE, ET AL.

Judgment Rendered: SEP 1 9 2025

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Nos. 715940 c/w 716906

Honorable Beau Higginbotham, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Phillip W. Preis<br>Caroline Preis Graham<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Dr. James Stenhouse |
| Ryan E. Johnson<br>C. Parker Kilgore<br>Rachel F. Moody<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellants<br>Louisiana Women's Healthcare<br>Associates, L.L.C., and Dr. Michael T.<br>Perniciaro, Dr. Frank Breaux,<br>Kim Sangari, and Richard Capdevielle |

\* \* \* \* \* \*

**BEFORE: McCLENDON, C.J., GREENE AND STROMBERG, JJ.**

**McCLENDON, C.J.**

In this appeal, the plaintiffs-in-reconvention challenge the trial court's judgment sustaining the defendant-in-reconvention's dilatory exception raising the objection of prematurity and dismissing their reconventional demand without prejudice. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

Louisiana Women's Healthcare Associates, L.L.C. (LWH), founded in 1997, is Baton Rouge's largest obstetrician and gynecological practice group. Dr. James Stenhouse was one of the original members of LWH. On August 10, 2020, during the COVID-19 pandemic, Dr. Stenhouse submitted a letter of resignation, making his resignation effective on September 30, 2020. On November 4, 2020, LWH and Dr. Stenhouse entered into an Act of Redemption of Membership Interests of Dr. Stenhouse in LWH (Redemption Agreement), in which LWH redeemed Dr. Stenhouse's membership interest for the amount of $47,017.00. Said amount was determined in accordance with the terms of an Amended and Restated Operating Agreement (Operating Agreement), which Dr. Stenhouse signed as part of his medical practice with LWH.

Of note, in early 2020, LWH began discussions with Ochsner Health Clinic Foundation (Ochsner) and other entities about a possible alignment or sale.[1] On December 30, 2020, after Dr. Stenhouse's resignation, the LWH Board of Managers entered into a letter of intent with Ochsner. On February 6, 2021, a second letter of intent was signed by the members of LWH, as the transaction was structured such that Ochsner was acquiring the membership interest of each member of LWH. After further negotiations, the sale of the membership interests of all LWH members occurred on April 8, 2021, effective May 1, 2021, in the amount of $47,844,500.00 to be allocated among each of the members of LWH.

---

[1] In their Amended and Restated Reconventional Demand, LWH and Dr. Michael Perniciaro acknowledged that the first reference to a potential alignment or transaction with Ochsner was in the February 2020 Board Minutes from LWH's Board of Managers. They also asserted that discussions with Ochsner and other entities continued throughout 2020.

2

On February 14, 2022, Dr. Stenhouse filed a Petition for Damages against LWC and several unnamed defendants.[2] Dr. Stenhouse filed a first amended petition on July 20, 2022, wherein he amended his claims against LWH. Not long after the filing of the first petition, Dr. Stenhouse filed a separate Petition for Damages on March 17, 2022, against LWH and several named defendants, including Dr. Michael Perniciaro, identified in the petition as a manager of LWH.[3] On October 17, 2022, the trial court granted LWH's motion to consolidate the two cases regarding discovery and pretrial procedures only, stating that the cases were to remain separate on the trial of the merits.

In his petitions, Dr. Stenhouse asserted that in the summer of 2020, he was approached by Kim Sangari, the chief executive officer of LWH, and Rick Capdevielle, the chief financial officer of LWH, regarding his declining practice revenue. Dr. Stenhouse specifically alleged that in July of 2020, LWH decided that Dr. Stenhouse should terminate his membership in LWH due to his lack of productivity. Dr. Stenhouse asserted that, prior to the COVID-19 pandemic, he had provided medical services as a licensed physician in the practice of obstetrics and gynecology over a 35-year time period. However, those patients had matured out of childbearing years and into routine preventative care visits, and, according to Dr. Stenhouse, his practice and income were materially affected by the pandemic and the aging of his patients.

Dr. Stenhouse averred that in August of 2020, he again met with Ms. Sangari and Mr. Capdevielle who told him that they did not see any alternative for him to stay. According to Dr. Stenhouse, Ms. Sangari and Mr. Capdevielle explained to him that the Board of Managers of LWH demanded immediate action and that no financial alternatives existed to wait out the COVID-19 pandemic. Dr. Stenhouse averred that he was given no alternative but to leave the practice within one to two months because he had no ancillary income during the pandemic and would owe money each month from the operation of his practice.

---

[2] See 19th Judicial District Court, Docket Number 715940.

[3] See 19th Judicial District Court, Docket Number 716906. Besides LWH, the only remaining defendant pertinent to this appeal is Dr. Perniciaro, who filed an Amended and Restated Reconventional Demand with LWH against Dr. Stenhouse.

3

Based on the ultimatum by the Board of Managers, Dr. Stenhouse stated that he and LWH agreed to the termination date of September 30, 2020. Dr. Stenhouse alleged that LWH coerced him into retiring at the height of the pandemic by not disclosing to him the financial alternatives to which he was entitled. Importantly, Dr. Stenhouse contended that LWH never disclosed to him that if he delayed his retirement by five or six months, the amount he would have received would have been dramatically more than the purchase price he received in the Redemption Agreement.

Dr. Stenhouse asserted that the first time he became aware of the sale of LWH to Ochsner was in an announcement in the Baton Rouge newspaper, *The Advocate*, on March 19, 2021. He further claimed that each of the doctors, regardless of their number of years of service with LWH, received a payment of approximately $1,200,000.00. He pointed out that the remaining members of LWH received 25 to 30 times more for their interests than he received five months earlier from LWH. He also averred that, prior to and on his termination date, the transaction with Ochsner was being discussed by members of the Board of Managers of LWH, but was never revealed to him.

Because of LWH's alleged failure to disclose to him the status of the potential sale to Ochsner, Dr. Stenhouse asserted that he suffered substantial financial injury as a result of the defendants' actions. Dr. Stenhouse alleged claims for breach of the implied covenant of good faith and fair dealing; breach of fiduciary duty; violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*; and negligent misrepresentation.

In response to the filing of the petitions, LWH filed a reconventional demand against Dr. Stenhouse on November 16, 2023. Thereafter, on February 16, 2024, LWH and Dr. Perniciaro filed an Amended and Restated Reconventional Demand (Reconventional Demand) against Dr. Stenhouse. In their Reconventional Demand, LWH and Dr. Perniciaro sought to recover damages that they asserted LWH sustained as a result of Dr. Stenhouse's alleged bad faith breach of the Operating Agreement and of the Redemption Agreement. LWH and Dr. Perniciaro contended that, based on the contracts, Dr. Stenhouse agreed to be paid a set price for his membership interest when he

resigned, not fair market value. Thus, they argued that Dr. Stenhouse's claims were in direct conflict with the contracts he signed and with what he agreed he would be paid.

On February 26, 2024, Dr. Stenhouse filed separate dilatory exceptions raising the objection of prematurity against LWH and against Dr. Perniciaro in response to the Reconventional Demand. Dr. Stenhouse contended that LWH and Dr. Perniciaro filed suit against him asserting that he breached the terms of the Operating Agreement and the Redemption Agreement because he filed a lawsuit for misrepresentation and omission against them. Therefore, according to Dr. Stenhouse, the breach of contract claim was nothing more than a malicious prosecution claim designed to deter Dr. Stenhouse from pursuing a valid claim and to retaliate against him for filing the claim.

Following a hearing on June 18, 2024, the trial court sustained the objection of prematurity. The trial court determined that LWH and Dr. Perniciaro's Reconventional Demand was a claim for malicious prosecution and, because there was no bona fide termination of the underlying suit, found that the Reconventional Demand was premature.

The trial court signed a judgment on July 12, 2024, granting Dr. Stenhouse's exceptions of prematurity to the Reconventional Demand. LWH and Dr. Perniciaro appealed. Thereafter, Dr. Stenhouse filed a motion to dismiss the appeal, maintaining that the appealed judgment was not appealable as it was not designated as a final judgment and because the principal demand remained pending.[4] On May 14, 2025, the trial court signed an amended judgment, granting the exceptions of prematurity filed by Dr. Stenhouse against LWH and Dr. Perniciaro and dismissing the Reconventional Demand without prejudice. Accordingly, we now address LWH and Dr. Perniciaro's assignment of error that the trial court erred in sustaining the dilatory exceptions raising the objection of prematurity and in dismissing their Reconventional Demand.

---

[4] On March 5, 2025, another panel of this court issued an Interim Order, in which it found that the trial court judgment lacked appropriate decretal language dismissing the Reconventional Demand and that the judgment was an interlocutory judgment as it granted leave to amend the pleadings. Therefore, this court remanded the matter for the limited purpose of inviting the trial court to issue an amended judgment correcting the judgment deficiencies and complying with LSA-C.C.P. art. 1918.

## LAW AND ANALYSIS

<u>Exception of Prematurity</u>

Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action rather than defeat it. LSA-C.C.P. arts. 923 and 926. The dilatory exception raising the objection of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. **Kelleher v. University Medical Center Management Corporation**, 2021-00011 (La. 10/10/21), 332 So.3d 654, 657. An action will be deemed premature when it is brought before the right to enforce it has accrued. **Crosby as Trustee of Aaron Guidry Trust v. Crosby Enterprises, LLC**, 2024-0276 (La.App. 1 Cir. 12/30/24), 403 So.3d 1126, 1132. Prematurity is determined by the facts existing at the time the suit is filed. **Gordon v. Pointe Coupee Health Service Dist. One**, 2009-2202 (La.App. 1 Cir. 8/11/10), 47 So.3d 565, 568, <u>writ denied</u>, 2010-2067 (La. 11/12/10), 49 So.3d 894.

The objection of prematurity raises the issue of whether the juridical cause of action has yet come into existence because some prerequisite condition has not been fulfilled. **Gordon**, 47 So.3d at 569. The objection contemplates that the action was brought prior to some procedure or assigned time and is usually utilized in cases where the applicable law or contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. **Id**.

Generally, a judgment sustaining a dilatory exception of prematurity and dismissing a cause of action on that basis is reviewed under the manifest error standard of review. **Pinegar v. Harris**, 2008-1112 (La.App. 1 Cir. 6/12/09), 20 So.3d 1081, 1088. However, where a purely legal question is presented, the judgment is reviewed *de novo*. **N'Dakpri v. Louisiana State Board of Cosmetology**, 2023-1213 (La.App. 1 Cir. 6/21/24), 392 So.3d 407, 415, <u>writ denied</u>, 2024-00932 (La. 11/6/24), 395 So.3d 1176.

Evidence may be introduced to support or controvert the exception, when the grounds do not appear from the petition. LSA-C.C.P. art. 930. Where no evidence is introduced at the hearing, as in the matter before us, the trial court must render its decision on the exception based upon the facts as alleged in the petition, and all

6

allegations therein must be accepted as true. **N'Dakpri**, 392 So.3d at 415. Moreover, the exceptor bears the initial burden of showing that a remedy or procedure applies, by reason of which the lawsuit is premature. **Crosby as Trustee of Aaron Guidry Trust**, 403 So.3d at 1132.

Malicious Prosecution

Dr. Stenhouse argued in his exception that the Reconventional Demand filed by LWH and Dr. Perniciaro is nothing more than a claim for malicious prosecution. The intentional tort of malicious prosecution is one that has been recognized since early in the jurisprudence of this state. While the cause of action in favor of one "whose liberty has been interfered with in an unwarranted manner" derives from the fault-reparation principles of LSA-C.C. art. 2315, the supreme court has imported certain restrictions and guidelines from the common law in defining the contours of the tort. **Lemoine v. Wolfe**, 2014-1546 (La. 3/17/15), 168 So.3d 362, 367; **Jones v. Soileau**, 448 So.2d 1268, 1271 (La. 1984). The limitations on the tort imposed by these restrictions reflect a careful balance between two important societal interests: the right of all persons to resort to the courts for redress of wrongs and to be protected when acting in good faith on reasonable grounds in commencing either a civil or criminal proceeding, and the right of an individual to seek redress for the malicious and unwarranted employment of the judicial process against him. **Lemoine**, 168 So.3d at 367. See also **Miller v. East Baton Rouge Parish Sheriff's Dept.**, 511 So.2d 446, 452 (La. 1987). To effectuate and implement this careful balance, the restrictions and guidelines that have been imported from the common law must be strictly adhered to before an action for malicious prosecution will be upheld. **Lemoine**, 168 So.3d at 367; **Robinson v. Goudchaux's**, 307 So.2d 287, 291 (La. 1975).

To prevail on an action for malicious prosecution, a plaintiff must prove: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. **Lemoine**, 168 So.3d at 367; **Jones**, 448 So.2d at 1271.

7

The action for malicious prosecution has never been favored, and strict compliance with all essential elements is required for its application. **Way-Jo, L.L.C. v. Anthony**, 2020-0361 (La.App. 1 Cir. 12/30/20), 319 So.3d 341, 349.

LWH and Dr. Perniciaro assert that they never used the term "malicious prosecution" in their Reconventional Demand and did not allege any of the elements for such a claim. According to LWH and Dr. Perniciaro, this was because they pleaded a breach of contract claim based on the provisions of the Operating Agreement and Redemption Agreement, and not a claim for malicious prosecution. Therefore, they contend, the trial court erred in sustaining the prematurity exceptions raising the objection of prematurity and dismissing their Reconventional Demand without prejudice.

In their Reconventional Demand, LWH and Dr. Perniciaro alleged that Dr. Stenhouse violated the terms and conditions of the two contracts by seeking additional compensation for his membership interest in LWH.[5] They assert that as a result of Dr. Stenhouse's breach of the Operating Agreement and the Redemption Agreement, Dr. Perniciaro and the other former members of LWH have suffered significant damages, including the expenses associated with the defense of Dr. Stenhouse's claims. Dr. Stenhouse argues, however, that LWH and Dr. Perniciaro are seeking to punish him for filing a lawsuit before the underlying suit is resolved.

Louisiana has a system of fact pleading, and it is not necessary for a plaintiff to plead the theory of his case in his petition.[6] **Ramey v. DeCaire**, 2003-1299 (La. 3/19/04), 869 So.2d 114, 118. Fact pleading advances several goals of the petition, such as satisfying a defendant's constitutional guarantee of due process by providing the

---

[5] For example, in Paragraph 49, LWH and Dr. Perniciaro alleged that Dr. Stenhouse "has continued to knowingly violate the terms and conditions of [the Operating Agreement and Redemption Agreement] - seeking additional compensation for his membership interest[.]" See also Paragraph 50 (Dr. Stenhouse "filed a lawsuit ... seeking additional compensation from LWH for his membership interest"), Paragraph 53 (Dr. Stenhouse "filed suit in direct conflict with both contracts and seeks payment for his membership interest above and beyond what was agreed upon"), Paragraph 58 (Dr. Stenhouse has persisted "to try and force LWH and the defendants to give him money to which he has no claim"), Paragraph 61 (allegations in Dr. Stenhouse's petition are "designed simply to coerce LWH and the [d]efendants into paying [him] money he is not entitled to"), Paragraph 74 (Dr. Stenhouse continues "to demand additional compensation from LWH for the membership interest"), Paragraph 90 (Dr. Stenhouse "has repeatedly and knowingly violated the terms of both the Operating Agreement and Redemption Agreement by seeking additional compensation for the membership interest he sold to LWH"), and Paragraph 102 (Dr. Stenhouse is "not entitled [to] this additional money" and he "or his counsel fabricated allegations against LWH and the Individual Defendants in an effort for them to pay [Dr.] Stenhouse what he is clearly not owed").

[6] Louisiana's fact pleading requirement replaces the earlier theory of the case pleading requirement. See LSA-C.C.P. art. 862, Official Revision Comments-1960, Comment (b).

8

defendant with fair notice, limiting the issues before the court, and notifying the defendant of the facts upon which the plaintiff bases his claims. **Fitzgerald v. Tucker**, 98-2313 (La. 6/29/99), 737 So.2d 706, 713; **Doyle v. Lonesome Development, Limited Liability Company**, 2017-0787 (La.App. 1 Cir. 7/18/18), 254 So.3d 714, 728, writ denied, 2018-1369 (La. 11/14/18), 256 So.3d 291. Moreover, every pleading must be construed so as to do substantial justice. LSA-C.C.P. art. 865.

Although LWH and Dr. Perniciaro have couched their allegations against Dr. Stenhouse in their Reconventional Demand as breach of contract claims, they are essentially arguing that he breached the terms of the Operating Agreement and the Redemption Agreement by filing a lawsuit that has no basis. However, while the Operating Agreement provided the terms of payment when Dr. Stenhouse retired, it did not dictate the timing of Dr. Stenhouse's retirement. Further, the timing of Dr. Stenhouse's retirement is a key factor in determining his pertinent payout. Had he chosen to delay his retirement until after the sale to Ochsner, he would not have been bound by the terms of redemption in the Operating Agreement. After carefully reviewing the allegations of LWH and Dr. Perniciaro in their Reconventional Demand, we find that their claims all relate to the filing of the lawsuit by Dr. Stenhouse and assert a claim for malicious prosecution. See **Cook v. American Gateway Bank**, 2010-0295 (La.App. 1 Cir. 9/10/10), 49 So.3d 23, 37 (wherein this court determined that the plaintiff's petition asserted a claim for malicious prosecution although that particular theory of recovery was never specifically identified by her as such).

In filing his exception raising the objection of prematurity, Dr. Stenhouse argues that there is an absence of one element essential to LWH and Dr. Perniciaro's claim for malicious prosecution. Specifically, he contends that there has been no bona fide termination in their favor in the underlying suit. The purpose of the bona fide termination requirement in a malicious prosecution case is that the underlying litigation should be brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed. **Savoie v. Rubin**, 2001-3275 (La. 6/21/02),

9

820 So.2d 486, 488. This requirement is not satisfied when the merits of the underlying proceeding have not been reached.[7] **Id.**

In this matter, the record clearly supports the trial court's finding that LWH and Dr. Perniciaro have not established the requisite elements of a malicious prosecution cause of action, as there has been no bona fide termination of an original proceeding in favor of LWH and Dr. Perniciaro. Consequently, the trial court did not err in sustaining the dilatory exceptions raising the objection of prematurity and dismissing the Reconventional Demand without prejudice.[8]

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment that sustained the dilatory exception raising the objection of prematurity filed by the defendant-in-reconvention, Dr. James Stenhouse, against the plaintiffs-in-reconvention, Louisiana Women's Healthcare Associates, L.L.C. and Dr. Michael Perniciaro, and dismissed their Amended and Restated Reconventional Demand without prejudice. All costs of this appeal are assessed against Louisiana Women's Healthcare Associates, L.L.C. and Dr. Michael Perniciaro.

**AFFIRMED.**

---

[7] An acquittal of the accused in a criminal proceeding or a finding of non-liability in a civil one following a trial is, of course, a favorable termination that satisfies this element of the malicious prosecution claim. **Lemoine**, 168 So.3d at 368. However, the prosecution of a cause does not always involve a trial. Short of a trial on the merits, and consistent with the policies underlying the favorable termination requirement, the courts of this state have looked for dispositions that tend to show that the court passed on the merits of the charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff in order to find a favorable termination. **Id.**

[8] LWH and Dr. Perniciaro's reliance on the third circuit case of **Lees v. Smith**, 363 So.2d 974 (La.App. 3 Cir. 1978) is misplaced. LWH and Dr. Perniciaro argue that the **Lees** case stands for the proposition that malicious prosecution cases are not allowed to be brought by way of reconventional demand. However, as the court explained:

> Obviously, when such a suit is brought by way of reconventional demand, requirement number 3, termination of the original suit, has not been met at the time of demand. The policy behind this requirement is apparent: a party bringing a suit should not be made to defend his right to bring such until it is fully determined at trial that the original action was erroneously brought.

**Lees**, 363 So.2d at 978.

Nor do we find merit to LWH and Dr. Perniciaro's argument that the Reconventional Demand is compulsory as they would lose their right to litigate their claim in a subsequent suit based on res judicata. Res judicata does not bar a subsequent action when the judgment in the first action dismissed the suit without prejudice. LSA-R.S. 13:4232(A)(2); **Neese v. East Baton Rouge Medical Center, LLC**, 2011-0811 (La.App. 1 Cir. 3/30/12), 2012 WL 1080866, *5 (unpublished), writ denied, 2012-0948 (La. 6/15/12), 90 So.3d 1066.